UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| BRUCE WHITE,<br><br>    Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Respondent. | Case No.: CV- 09-335-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Now pending before the Court is Bruce White's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny his application for disability insurance benefits. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

On June 30, 2006, Bruce White ("Petitioner") applied for Disability Insurance Benefits (AR 96-101). Petitioner's claim was initially denied on September 28, 2006 and, again, on reconsideration on December 29, 2006. (AR 56-58). On January 5, 2007, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 72). On November 17, 2008, ALJ R.S. Chester held a hearing in Clarkston, Washington, at which time Petitioner,

**MEMORANDUM DECISION AND ORDER - 1**

represented by attorney Clifford K. B'Hymer, appeared and testified. (AR 8). A vocational expert, Tom L. Moreland, also appeared and testified during the same November 17, 2008 hearing. (AR 46-55).

On December 19, 2008, the ALJ denied Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 8-20). Petitioner timely requested review from the Appeals Council on January 15, 2009 (AR 90-95). On June 10, 2009, the Appeals Council denied Petitioner's request for review (AR 1-3), making the ALJ's decision the final decision on the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that "the medical evidence . . . fully supports his disability claim." *See* Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 12). Although not altogether clear, Petitioner appears to assert that the ALJ (1) failed to analyze properly whether Petitioner's condition met or equaled Listing 1.04; (2) committed legal error by not scheduling a medical expert at Petitioner's hearing; and (3) erred in rejecting Petitioner's testimony. *See id*. Petitioner requests that the Court reverse the ALJ's decision and order the immediate payment of benefits or, alternatively, remand the case for further proceedings. *See id*.; *but see infra* at p. 8, n. 3.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). That is, if there is substantial evidence to support the ALJ's factual decisions,

they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.

*See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

#### A. Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "did not engage in substantial gainful activity during the period from his alleged onset date of April 3, 2004 though his date last insured of March 31, 2007." (AR 10).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration

**MEMORANDUM DECISION AND ORDER - 4**

requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairment - "degenerative disc disease of the lumbar spine, status-post two surgeries including fusion." (AR 10-13).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 13-14).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional

capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform light work with the following limitations: (1) Petitioner would need to alternate sitting and standing every 1.5 hours; (2) Petitioner could occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ramps; (3) Petitioner would need to avoid concentrated exposure to vibration; (4) Petitioner would need to avoid hazards such as machinery and heights; and (5) Petitioner would need to avoid climbing ladders, ropes, and scaffolding. (AR 14-18). In doing so, the ALJ further found that Petitioner was capable of performing past relevant work as a sales person because "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (AR 18).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he/she is not disabled; if the claimant is not able to do other work and meets the duration requirement, he/she is disabled.

**MEMORANDUM DECISION AND ORDER - 6**

Here, as discussed above, the ALJ determined that Petitioner could perform past relevant work as a sales person. Additionally, the ALJ also identified the following occupations, available in significant numbers in the national economy, that Petitioner is able to perform: (1) Cashier II; (2) Ticket Seller; and (3) Electronic Assembly. (AR 19).

**B.  Analysis**

Preliminarily, the scope of Petitioner's objections is not obvious. After spending the first eight pages of his 11-page brief outlining the procedural background, the law to be applied, and the alleged facts, Petitioner devotes one page to the "issues raised." *See* Pet.'s Brief in Supp. of Pet. for Review, pp. 8-9 (Docket No. 12). While these highlighted "issues" could be interpreted as a simultaneous challenge to the ALJ's decision (and, thus, argument), there are no references to the administrative record and no citations to any legal authority. Additionally, at least one "issue" is not readily understandable, with Petitioner stating:

> The severity of the medical impairments present in this case also demonstrates that petitioner's credible testimony of disabling conditions which would preclude evidence. The ALJ decision to the contrary is simply not supported by substantial evidence.

*See id.*[1] In these respects, the Court generally agrees with Respondent's argument concerning Petitioner's "fail[ure] to argue with any specificity in his briefing how the ALJ erred in making his findings other than to say he erred and did not support his decision." *See* Resp't Mem., p. 5 (Docket No. 13) (citing *Carmickle v. Commissioner*, 533 F.3d 1155, 1161, n. 2 (9th Cir. 2008) (rejecting claimant's argument where he "failed to argue this issue with any specificity in his

---

[1] Petitioner's Petition for Review does nothing to outline further the issues/arguments presented for this Court's consideration. *See* Pet. for Review, p. 2, ¶¶ 5, 6 (Docket No. 1) ("That the petitioner complains of a decision of the respondent which adversely affects the petitioner in whole or in part. The decision has become the final decision of the Commissioner for the purposes of review . . . . The respondent is in error in his decision.").

**MEMORANDUM DECISION AND ORDER - 7**

briefing.")); *see also Meyers v. Starke*, 420 F.3d 738, 743 (8th Cir. 2005) (failure to present issues with some specificity can result in waiver).[2]

Nonetheless, the Court will consider what it understands to be three identifiable, even if seemingly generic, arguments: whether the ALJ (1) erred in determining that Petitioner has no impairment (or combination of impairments) that meets or medically equals a listed impairment; (2) erred in not scheduling a medical expert at Petitioner's November 17, 2008 hearing; and (3) erred in rejecting his own testimony. *See* Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 12).[3]

1. <u>Whether Petitioner's Impairments Meet or Equal a Listed Impairment</u>

As discussed above, an ALJ must evaluate a claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Supart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." *See* SSR 83-19; *see also* 20 C.F.R. § 404.1525. An impairment equals a listed impairment only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment. *Tackett*, 190 F.3d at 1099.

---

[2] It is also worth pointing out that, despite these arguments, Respondent went on to offer counter-arguments to each of the three "issues" presented within Petitioner's briefing. Petitioner did not submit any reply memorandum in support of his Petition for Review.

[3] To further evidence the opaqueness of Petitioner's arguments, Petitioner not only requests that the Court reverse the ALJ's decision outright, but, alternatively, requests only that the action be remanded "with specific instruction to take testimony from a medical expert as to the nature and severity of petitioner's medical impairment." *See* Pet.'s Brief in Supp. of Pet. for Review, pp. 9-10 (Docket No. 12). There are no other reasons offered in support of remanding the action for any additional development or proceedings.

**MEMORANDUM DECISION AND ORDER - 8**

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listing impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment" does not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if they adequately summarize and evaluate the evidence. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990); *Lewis*, 236 F.3d at 512. Here, Petitioner states only that "[i]n all likelihood[,] [P]etitioner's orthopedic impairments meet[ ] or equal[ ] in severity Appendix One medical 1.04. *See* Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 12).

Consistent with Petitioner's claim, the ALJ considered Petitioner's degenerative disc disease of the lumbar spine under Listing 1.04 - Disorders of the Spine. (AR 13). Listing 1.04 requires that the following criteria be met:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting

**MEMORANDUM DECISION AND ORDER - 9**

in inability to ambulate effectively . . . .

(AR 13); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. With this backdrop, the ALJ concluded:

> There is no medical evidence of the claimant having spinal arachnoiditis and there is specific medical notation that no spinal stenotic symptoms were present. Although the claimant has undergone two spinal surgeries, all objective medical tests indicate the claimant's fusion to be stable prior to his alleged date of disability onset and the mild disc protrusions found in August 2006 were not noted to be compressing the nerve root or spinal canal. Therefore, the basic criterion of Listing 1.04(A), (B), and/or (C) has not been met. Moreover, there is no medical evidence in the record from any physician that the claimant's condition met or medically equaled the listing of impairment.

(AR 13). Because Petitioner offers neither (1) an analysis[4] corresponding to his argument that he meets or equals a listed impairment nor (2) any focused response/objection to the ALJ's determination, it is difficult for the Court to conclude that the ALJ's findings are not supported by the requisite evidence - even after the Court conducts its own, independent review of the record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (even in *pro se* context, "[c]ourts are not bound to 'scour the record for every conceivable error' . . . .") (internal citations omitted)).

Listings criteria are demanding and stringent, with the burden of proof resting with a claimant. That burden is to provide and identify medical signs and laboratory findings that support all criteria for an impairment determination. *See, e.g.*, *Lewis v. Apfel*, 236 F.3d 503, 514

---

[4] Petitioner's casual statement that, "[i]n all likelihood[,] [P]etitioner's orthopedic impairments meet[ ] or equal[ ] in severity Appendix One medical 1.04" (*see* Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 12)) does not constitute any legitimate analysis that this Court can cross-reference against the ALJ's findings.

**MEMORANDUM DECISION AND ORDER - 10**

(9th Cir. 2001) (ALJ did not err in failing to discuss combined effects of claimant's impairments, or compare them to any listing, where claimant offered no theory or evidence showing that his impairments equaled listing impairment); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (same); *McCuller v. Barnhart*, 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990); 20 C.F.R. § 404.1526(a). "[W]hen a claimant fails, courts must conclude that substantial evidence supports the ALJ's findings that Listings-level impairments are not present." *Washington v. Barnhart*, 413 F. Supp. 2d 784, 793 (E.D. Tex. 2006) (citing *Selders*, 914 F.2d at 620).

There is no question that Petitioner suffers from an impairment that no doubt impacts his ability to work; however, it is not enough to say, as Petitioner's counsel does, that, "in all likelihood", Petitioner meets a listed impairment. *See* Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 12). More is needed. While Petitioner may dispute the ALJ's findings, they were not given in a vacuum, independent of the surrounding medical record and balance of briefing.

At this stage of the proceedings - and with the record/briefing now before the Court - it is not this Court's duty to resolve any conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court is tasked with determining whether the ALJ's decision in determining that Petitioner is not disabled is supported by the record. With this in mind, the ALJ has offered sufficient, unrebutted reasons for finding that Petitioner's impairments do not meet or equal a listed impairment. Because the evidence can reasonably support the ALJ's conclusion in this respect, this Court will not substitute its judgment for that of the ALJ's. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

**MEMORANDUM DECISION AND ORDER - 11**

2. <u>Using a Medical Expert at the Administrative Hearing</u>

Petitioner contends that the ALJ should have used a medical expert at the administrative hearing "to determine whether [P]etitioner met or equaled in severity [a listed impairment at] step 3 of the sequential evaluation." *See* Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 12). Here, the ALJ was not required to call a medical expert to testify whether Petitioner's impairment met or equaled Listing 1.04.

According to Social Security Ruling (SSR) 96-6p (available at 1996 WL 374180), when an ALJ determines that a claimant's impairment is not equivalent to any listing, "the ALJ may satisfy the duty to receive expert opinion evidence into the record by obtaining the signature of a state medical consultant on the appropriate [Disability Determination and Transmittal Form]." *See Castaneda v. Astrue*, 344 Fed.Appx. 396, 398 (9th Cir. 2009). Here, the ALJ determined that Petitioner's impairment was not equivalent to any listing. *See supra* at pp. 9-10. This determination was supported by substantial evidence. *See supra* at p. 11. Because the ALJ did not err in concluding that Petitioner's impairment did not meet or equal listing 1.04, and because the state's non-examining medical experts signed the required Disability Determination and Transmittal forms (AR 56-58), the ALJ satisfied the requirement to receive the requisite expert evidence into the record. Petitioner may well prefer that the ALJ seek another medical reviewer for the obvious reason that such a review might enhance his position that he is disabled under the Social Security statutes. However, neither the record in this case nor the governing law requires the Procedure that Petitioner advances. Similarly, this Court has no reason to impose here such a procedure upon the ALJ.

Nevertheless, Petitioner seems to offer only a generic observation/complaint regarding the administrative review protocol as a whole, without any real application to the ALJ's

**MEMORANDUM DECISION AND ORDER - 12**

conclusions generally, or his decision-making process specifically. Without more, and without a statutory or regulatory mandate (Petitioner points to none), this Court cannot compel what is neither warranted nor required.

   3.   Petitioner's Credibility

Petitioner finally takes issue with the ALJ's conclusion that Petitioner's testimony concerning the intensity, persistence, and limiting effects of his symptoms is not credible. *See* Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 12); *see also* (AR 16). As the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). In evaluating a claimant's credibility, an ALJ may consider the claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Appropriately, however, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.

First, notwithstanding Petitioner's allegations of constant back and leg pain, the ALJ highlighted evidence suggesting that Petitioner may not have been entirely objective when describing his alleged physical limitations. For example, even after his alleged onset date of April 3, 2004, the ALJ found that Petitioner "had aggravations of pain while engaging in

**MEMORANDUM DECISION AND ORDER - 13**

strenuous activities and received significant relief in pain when he participated in his prescribed exercises and therapies" (AR 16), noting :

- Petitioner complained of temporary aggravations of pain when washing cars in May 2004 and when moving furniture in April 2005. *See id.*

- "In March 2006, a physical evaluation found the claimant's musculoskeletal and neurological examination to be within normal limits and in April 2006, the claimant told his treating physician that his back pain was managed without narcotic pain medication." *See id.*

- "In July 2006, the claimant was found to walk around the room with no complaints and exercises were encouraged with both physical and pool therapy being reported to be of great help with his symptoms." *See id.*

Petitioner does not specifically respond to these challenges to his credibility. *See* Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 12).

The ALJ next found that "the record does not support the claimant's hearing testimony that he could only sit for 1 ½ hours at a time and stand and walk for 30 minutes at a time before needing to lie down and/or ice his back or lie down/recline for up to 2 hours in a day as a method of pain reduction." (AR 16-17). According to the ALJ, these limitations "were not issued or discussed by [Petitioner's] treating physicians nor were they mentioned by the claimant to his treating physicians in his medical visits." (AR 17). Moreover, the ALJ referenced Petitioner's daily activities, further contradicting Petitioner's testimony of constant pain:

- "The claimant noted he was capable of all personal care activities and such would include dressing and bathing which would require some bending and twisting." *See id.*

- "The claimant testified he had no difficulties driving a motor vehicle, another activity requiring bending and twisting." *See id.*

- Petitioner "took care of the household chores as his wife worked during the day. He described taking care of the cleaning, shopping, laundry, and cooking of all meals as well as mowing the lawn." *See id.*

**MEMORANDUM DECISION AND ORDER - 14**

- "The claimant did allege sleep difficulties at the hearing but informed Dr. Bond in April 2006 he did not have any sleep disturbances." *See id.*

- "As indicated above, the claimant was also washing cars and moving furniture." *See id.*

Again, Petitioner does not specifically respond to these challenges to his credibility. *See* Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 12).

Another relevant consideration relied upon by the ALJ in questioning Petitioner's credibility is Petitioner's "statement that the reason he was being kept from working [is] by not being hired." (AR 17). Indeed, at the November 17, 2008 hearing, Petitioner testified:

> ALJ: And so what keeps you from working?
>
> PET: Basically is non-acceptance of employers.
>
> ALJ: Are you still looking for work?
>
> PET: I'm keeping my eyes and ears open.
>
> ALJ: What kind of jobs are you looking for?
>
> PET: Well, anything from some light-duty truck driving, also some sales positions. I sold cars for a while in between my two back surgeries.
>
> ALJ: Uh-huh.
>
> PET: [A]nd so I keep in touch with the salespeople and the management at the old dealership and things like that. Touch bases with different ones around the Valley.

(AR 30-31); *see also* (AR 17) (ALJ stating: "He did not allege he could not physically perform the work he has been looking and applying for and stated he continued to look for work."). Once again, Petitioner does not specifically respond to these challenges to his credibility. *See* Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 12).

Finally, the infrequency of treatment that Petitioner received for his alleged disability was also important to the ALJ's credibility analysis. (AR 17) ("Absent from the record is any medical opinion from the claimant's treatment physicians during the relevant time period at issue specifically delineating the claimant's abilities and limitations. . . . . It is noted, however, that no doctor has limited the claimant's sitting, standing, or walking abilities either before or after the alleged date of disability onset."). Petitioner also does not specifically respond to these challenges to his credibility. *See* Pet.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 12).

These unaddressed reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner entirely credible. The ALJ's conclusions, while potentially at odds with another's interpretation of that same evidence, is nonetheless supported by substantial evidence in the record. As required by controlling law, the ALJ will not be second-guessed here. *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (internal citations omitted)). Therefore, the Court will not substitute its judgment when the evidence in the record (and argument supplied in the briefing) can support the ALJ's findings.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that the ALJ. *Key*, 754 F.2d at 1549.

**MEMORANDUM DECISION AND ORDER - 16**

I am of the opinion that the evidence upon which the ALJ relied can reasonably and rationally support his conclusions, despite the fact that such evidence may be susceptible to a different interpretation. The ALJ's decisions were based on proper legal standards and supported by substantial evidence. Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety, with prejudice.

DATED:  **September 29, 2010**

Honorable Ronald E. Bush
U. S. Magistrate Judge